**Opinion issued August 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-18-00268-CV**

———————————

**SHANNON LANG, Appellant**

**V.**

**MATHEW KNOWLES AND MUSIC WORLD PROPERTIES, LLC A/K/A MW PROPERTIES, LLC, Appellees**

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-20160**

## MEMORANDUM OPINION

In this interlocutory appeal,[1] appellant, Shannon Lang, challenges the trial court's denial, in part, of her motion to dismiss the counter- and cross-claims of

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008.

appellees, Matthew Knowles ("Knowles") and Music World Properties, LLC, also known as MW Properties, LLC ("Music World"), pursuant to the Texas Citizens Participation Act ("TCPA").[2]  In her sole issue, Lang contends that the trial court erred in partially denying her motion to dismiss.

We affirm.

## Background

In its original petition, Lang Ferrer, PLLC (the "Law Firm") alleged that it entered into a written contract to provide legal representation to Knowles and Music World pursuant to which they agreed to pay the Law Firm for the legal services it provided.  The Law Firm alleged that, despite it having "fully performed all conditions, covenants and promises" to Knowles and Music World, Knowles and Music World had "not paid for the legal services they received" in the amount of $49,120.35.

The Law Firm brought claims against Knowles and Music World for breach of contract, suit on account, fraud, fraudulent inducement, unjust enrichment, quantum meruit, promissory estoppel, and for violations of the Texas Uniform Fraudulent Transfer Act[3] and the Texas Theft Liability Act.[4]  The Law Firm sought

---

[2]    *See id.*

[3]    *See* TEX. BUS. & COM. CODE ANN. §§ 24.001–.013.

[4]    *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.001–.005.

2

"actual damages in an amount no less than" $49,120.35, "[p]unitive damages as allowed by law," "[a]n award of . . . reasonable and necessary attorney's fees," "costs of suit," "[p]re- and post-judgment interest," and "[s]uch other and further relief, at law or in equity, to which [i]t may be justly entitled." The petition was signed by Justin W. R. Renshaw as "Counsel for Plaintiff, [the Law Firm]."

The Law Firm attached to its petition, and incorporated by reference, a demand letter sent on its behalf by its attorney to Knowles and Music World "threatening to sue" (the "Demand Letter"). The Demand Letter provides, in part, as follows:

> We represent [the Law Firm] with respect to the referenced matter. This letter is notice of [the Law Firm's] claim and attempt to resolve this matter without litigation.
>
> On November 2, 2016, you executed a written contract with [the Law Firm]. Under the terms of the contract [the Law Firm] promised to provide you and Music World . . . legal representation and you promised to pay for these services. A copy of the contract is attached for your ready reference.
>
> . . . .
>
> It has come to our attention that you are hosting a silent auction this Super Bowl weekend in Houston, which includes music memorabilia and other items from your management of your daughter, Beyoncé [Knowles-Carter], the group Destiny's Child etc. Presumably you are liquidating these items to pay debts, including the amount due to [the Law Firm]. To the extent you may be disposing of these and other assets to avoid your debts and legal obligations, however, we will consider the sale of such items to be fraudulent transfers and will seek all available remedies for same in the event [the Law Firm's] invoices are not paid as demanded.

Knowles and Music World filed their First Amended Answer, Counterclaim and Cross Claim, generally denying the allegations and asserting "specific and affirmative denials/defenses." Additionally, Knowles and Music World brought counterclaims against the Law Firm and cross-claims against "Shannon Lang, individually, and Ada Ferrer, individually," as attorneys who worked for the Law Firm. They alleged that, "[b]ecause both Lang and Ferrer, individually[,] were the attorneys in the [Law Firm] that represented" Knowles and Music World, Lang and Ferrer were subject "to personal legal liability for the misconduct and . . . negligence [that] they performed."

More specifically, Knowles and Music World brought claims, jointly against the Law Firm, Lang, and Ferrer, for unfair debt collection practices, legal malpractice,[5] breach of fiduciary duty and the duties of loyalty and truthfulness, and breach of contract. Knowles and Music World also provided notice to the Law Firm, Lang, and Ferrer that "they intend[ed]" to seek damages for the "false and defamatory claim that . . . Knowles sold at auction memorabilia of Destiny's Child

[5] The legal malpractice claim is not at issue on appeal. Lang asserts that she did not seek dismissal for the cross-claim for legal malpractice because it was "tailored to" the representation of Knowles and Music World by the Law Firm, Lang, and Ferrer in previous the Fun Fest matter as opposed to the claims brought by the Law Firm in the instant case.

4

and of his famous daughter to avoid paying his creditors" pursuant to "Rule 13 and Chapter 10, Tex. Civ. Prac. Rem. Code."

With respect to their unfair-debt-collection-practices claim, Knowles and Music World alleged that, in connection with their "efforts to collect inflated legal invoices," the Law Firm, Lang, and Ferrer "engaged in flagrantly false and defamatory debt collection practices without any legal or factual justification." The false and defamatory practices alleged included the Law Firm, Lang, and Ferrer "falsely publish[ing] the claim[s] in th[e] lawsuit, as well as in a letter prior to filing suit, that . . . Knowles sold at auction memorabilia of Destiny's Child and/or his famous daughter Beyoncé [Knowles-Carter] to fraudulently avoid paying his creditors." Knowles and Music World alleged that the claim was "a complete lie that was used by" the Law Firm, Lang, and Ferrer "without any factual support and in direct violation of the . . . [Texas Unfair] Debt Collection Practices Act[], as well as Rule 13[ of the Texas Rules of Civil Procedure], and Chapter 10" of the Texas Civil Practices and Remedies Code.

With respect to their legal-malpractice claim, Knowles and Music World alleged that the Law Firm, Lang, and Ferrer "engaged in legal negligence and did not perform the reasonable [and] necessary legal research before recommending" that Knowles and Music World "enter into a settlement" in a previous matter "that would have advantaged and/or exonerated" them "in negotiating the settlement with

5

the parties." They further allege that the Law Firm, Lang, and Ferrer also "breached" their "confidential information by allowing non-clients to participate in conflicting and private settlement negotiations," failed to reasonably advise them "before recommending [that] they accept and be bound by the settlement agreement in" the previous matter, and that "the settlement created personal liabilities for . . . Knowles, individually, that should not have been recommended by" the Law Firm, Lang, and Ferrer.

With respect to their claim for breach of fiduciary duty and of the duties of loyalty and truthfulness, Knowles and Music World alleged that The Law Firm, Lang, and Ferrer breached their fiduciary duty and their duties of loyalty and "commitment to truthfulness" to Knowles and Music World "in both the prior representation as well as in the present alleged debt collection suit in at least the following non-exclusive" ways:

- Failing to advise [Knowles and Music World] about available and applicable legal defenses and excuses against the claims of the plaintiffs in the [previous matter];
- Failing to research and develop material facts to excuse [Knowles and Music World's] conduct in the [previous matter];
- Charging excessive fees for unreasonable legal services;
- Providing negligent legal representation;
- Putting collection of its excessive charges ahead of [Knowles and Music World's] interests;
- Falsely publishing a claim that [Knowles and Music World] were auctioning off Destiny's Child memorabilia to avoid paying creditors which was and is a lie;

6

- Falsely claiming [Knowles and Music World] were auctioning off Beyoncé Knowles[-Carter] memorabilia to avoid paying creditors which was and is a lie;

- Charging excessive fees;

- Not applying proper offsets and credits to remove unreasonable fee charges from invoices;

- Trying to collect excessive interest charges on a debt before actual accrual;

- Failing to keep [Knowles and Music World] reasonably informed about legal and factual developments; and

- Failing to protect . . . Knowles, individually, from liability that was not his to incur.

With respect to their breach-of-contract claim, Knowles and Music World alleged that the Law Firm, Lang, and Ferrer "breached the written and oral contract they entered" into with Knowles and Music World "and the implied covenants that are contained in same."

Lang moved to dismiss Knowles and Music World's cross-claims against her pursuant to the TCPA, arguing that all or part of Knowles and Music World's counter claims should be dismissed because the claims are "based on or related to her 'exercise of the right to petition.'"[6] Specifically, she asserted that Knowles and Music World's cross-claims against her were based on the Demand Letter and the Law Firm's suit to recover unpaid legal fees.

---

[6]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003.  The Law Firm and Ferrer filed a motion for leave to join Lang's motion to dismiss, which was denied.

According to Lang, the Law Firm, at which she was formerly a partner, represented Knowles and Music World in a previous matter in which an organization, Fun Fest, "sought to enforce a lease with Music World giving Fun Fest the right to use Music World's location to throw a party the Saturday before Super Bowl LI." The dispute with Fun Fest arose because "Music World sought to avoid [its] lease to Fun Fest because it was approached by another lessee, Super Bash, which wanted to lease the property on the same day for a higher price" and that this was "not the first time Music World had been accused of such conduct," i.e., "leasing its property to two entities on the same day and refusing to honor the first lease which was for a lesser amount." After the Law Firm successfully negotiated a settlement for Knowles and Music World, Knowles and Music World then refused to pay the Law Firm the legal fees that they owed.

Thereafter, the Law Firm learned through advertisements that at the Super Bash event at Music World's location, "there would be an auction of music and sports memorabilia." The advertisement also mentioned that Music World "IS HOME TO THE MOST #1 SONG HITS IN HOUSTON AND RICH WITH HISTORY OF LEGENDS SUCH AS DESTINY'S CHILD, RICK ROSS, LIL WAYNE, MARIO, BEYONCÉ & CHRIS BROWN AND MANY OTHERS . . . . SILENT AUCTION – BID ON MUSIC AND SPORTS MEMORABILIA." Lang asserted, therefore, that reference to the "auction of music

8

memorabilia after mentioning recording artists . . . created the clear impression that the auction would include memorabilia or items from Music World." And in response to the advertisement, and Knowles and Music World's failure to pay the Law Firm's legal fees, the Law Firm delivered the Demand Letter to Knowles and Music World.

Lang attached to her motion, among other things, an affidavit by Lang and Knowles and Music World's responses to Lang's requests for disclosure.

Knowles and Music World responded[7] to Lang's motion to dismiss, asserting their cross-claims did not implicate the TCPA. With respect to their breach-of-fiduciary-duty claim, they asserted that the Law Firm, Lang, and Ferrer "charg[ed] excessive fees for the[] sparse legal work" and turned "hostile toward . . . Knowles" by stopping to represent his "best interests in the Fun[]Fest litigation" and "fil[ing] a motion to withdrawal from the representation." Specifically, Knowles and Music World stated that "nothing meaningful was done" on behalf of them "after the legal invoices of the [Law F]irm were disputed." They further alleged that Lang "threatened . . . Knowles to make things look 'ugly' for him if he did not pay the invoices" and Lang and Ferrer "manufactured the complete lie that Mr. Knowles was engaging in an auction to defraud creditors." This "lie" was included in the

---

[7] Knowles and Music World filed separate responses. Music World filed its response after Knowles and joined in Knowles's response.

9

Demand Letter, which the Law Firm "unnecessarily filed" in connection with its original petition "when its false contents were not relevant or needed for any of the claims they have asserted in the case." And the "lie" had been "republished many times to . . . Knowles'[s] harm." Knowles and Music World further asserted that "in their rush to get out of the case[,] the [Law Firm, Lang, and Ferrer] advised and rushed . . . Knowles to approve and sign off on an ill-advised settlement agreement that encumbered him with debt he previously had no legal obligation to pay," which "suggest[ed] the [Law Firm, Lang, and Ferrer] put their own interests (collecting their disputed fee invoices) ahead of the clients' best interests." The remaining allegations supporting Knowles and Music World's breach-of-fiduciary-duty claim concern the alleged "false auction lie."

With regard to their unfair-debt-collection-practices claim, Knowles and Music World asserted that the facts supporting the breach-of-fiduciary-duty claim also support this claim "to the extent [that] the auction lie was included in [the] debt collection demands" by the Law Firm, Lang, and Ferrer because "[i]t is black-letter Texas law that a creditor is not allowed to use false information to attempt the collection of a debt" and the Law Firm, Lang, and Ferrer "used the false auction lie for precisely this purpose."

With regard to their legal-malpractice claim, Knowles and Music World asserted, among other things, that, with respect to the prior Fun Fest litigation, the

10

Law Firm, Lang, and Ferrer failed to advance material defenses, procure necessary damages experts, depose or locate key witnesses, inform the clients of conflicts, "in the joint representation," and reasonably prepare to challenge Fun Fest's damages model. Knowles and Music World further asserted that the Law Firm, Lang, and Ferrer pressured Knowles, during settlement discussions with Fun Fest, to personally "sign off on an agreement that imposed financial liability on him" for which he was not responsible because the Law Firm, Lang, and Ferrer "want[ed] to get out of the lawsuit because their invoices had not been paid." Specifically, Knowles and Music World allege that Knowles "is now facing a [subsequent] $65,000.00 claim, plus additional attorneys' fees, in yet another suit . . . arising out the settlement agreement" the Law Firm, Lang, and Ferrer "counseled Knowles to sign."

With regard to their breach-of-contract claim, Knowles and Music World asserted that the Law Firm, Lang, and Ferrer "breached the written fee contract" with Knowles and Music World, which caused them "separate damages" beyond what are recoverable in the legal-malpractice claim. Further, the contract at issue contains a "unique payment provision," which "expressly releases [Knowles and Music World] from having to pay any unreasonable portion of [the Law] [F]irm's invoices." According to Knowles and Music World, an independent attorney reviewed the reasonableness of the fees charged by the Law Firm, Lang, and Ferrer and determined that the "invoices were excessive for the amount of work the

11

attorneys had performed." And "[r]ather than comply[ing] with the contract," the Law Firm abandoned its "reasonable representation" of Knowles and Music World and "advised [Knowles] to execute a settlement agreement that was not in his best interest." This resulted in requiring Knowles to "hire lawyers and incur the expense of hiring experts to prove that" the Law Firm's "invoices were rightly challenged." Knowles purportedly incurred over $21,000.00 in "costs, fees, and expenses" that are "distinct from the damages flowing from the fault legal advice and counseling provided by" the Law Firm, Lang, and Ferrer.

With regard to their claim for breach of the duties of loyalty and truthfulness, Knowles and Music World asserted that the Law Firm, Lang, and Ferrer invoiced Knowles and Music World for "personal expenses that had nothing to do with the firm's representation" and that insisting Knowles "pay those personal expenses, along with payment of excessively high fees, [constituted] a breach of the . . . duty of loyalty and truthfulness."

Knowles and Music World attached to their responses, among other things, affidavits, blog posts, and other media reports regarding the claim of "auctioning" of memorabilia to avoid payment to his creditors.

After filing a reply to Knowles and Music World's response, Lang filed a Supplement to her Motion to Dismiss, in which she, "[i]n an abundance of caution, by [the] supplement[,]" also "move[d] for dismissal based on her 'exercise of the

12

right to free speech' in addition to already seeking dismissal based on the 'exercise of the right to petition.'"[8]   She further asserted that she "believes [that] the republication by others of the pleadings and [D]emand [L]etter fall within the right to petition," but such actions also constituted the "exercise of the right to free speech in the event [that] the [trial court] deem[ed] the articles and blogs that [Knowles and Music World] filed with their response[s] . . . to be outside the right to petition."

After a hearing, the trial court denied Lang's motion to dismiss, except that it granted dismissal of the claim for unfair debt collection practices asserted by Music World.[9]

### Standard of Review

We review statutory construction issues regarding the TCPA and its applicability de novo.  *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015); *Toth v. Sears Home Improvement Prods.*, 557 S.W.3d 142, 150 (Tex. App.— Houston [14th Dist.] 2018, no pet.).  The purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002.  The TCPA

---

8       *See id.*
9       Music World conceded dismissal was appropriate at the hearing.

seeks to "protect[] citizens from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). Under the TCPA, "[i]f a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).

A "defendant invoking the [TCPA's] protections must show first, by a preponderance of the evidence, that the plaintiff's legal action is 'based on, relates to, or is in response to' the defendant's exercise of one or more of the enumerated rights." *Toth*, 557 S.W.3d at 149 (quoting *Lipsky*, 460 S.W.3d at 586). If a defendant makes the initial requisite showing to invoke the TCPA, the burden then shifts to the plaintiff to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). The phrase "prima facie case" traditionally "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590. In other words, the "prima facie standard requires only the minimum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (internal quotations omitted). Further, the evidence to support the plaintiff's

14

prima facie case must be "clear and specific," meaning the "plaintiff must provide enough detail to show the factual basis" for his or her claim. *Lipsky*, 460 S.W.3d at 591. "When considering the motion to dismiss, the court considers both the pleadings and any supporting and opposing affidavits." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a)). "If the defendant's constitutional rights are implicated and the plaintiff has not met the required showing of a prima facie case, the trial court must dismiss the plaintiff's claim." *Toth*, 557 S.W.3d at 150 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.005).

## Applicability of TCPA

In her sole issue, Lang argues that the trial court erred in partially denying her motion to dismiss because Knowles and Music World's claims for breach of fiduciary duty and the duties of loyalty and truthfulness, breach of contract, and unfair debt collection practices[10] because they focus on the Demand Letter and the instant suit and, therefore, are subject to dismissal under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003. In response, Knowles and Music World assert

---

[10] Lang asserts that she did not seek dismissal for the cross-claim for legal malpractice because it was "tailored to" the representation of Knowles and Music World by the Law Firm, Lang, and Ferrer in previous the Fun Fest matter as opposed to the claims brought by the Law Firm in the instant case.

that their claims do not implicate any of the rights enumerated in the TCPA in regard to Lang.

As an initial matter, we must determine whether Lang demonstrated, "by a preponderance of the evidence," that Knowles and Music World's legal action against her is "based on, relates to, or is in response to" her exercise of one or more of the "enumerated rights" set forth in the TCPA. *See Toth*, 557 S.W.3d at 149 (quoting *Lipsky*, 460 S.W.3d at 586). In her motion to dismiss, Lang asserted that Music World and Knowles's claims were based on the petition filed by the Law Firm in the instant case and Demand Letter and, thus, were brought in response to her exercise of the right to petition. In her supplemental motion to dismiss, Lang argued that she was also entitled to dismissal under the TCPA because Knowles and Music World's cross-claims involved her "exercise of the right to free speech" concerning the republication of the petition and Demand Letter in blogs and media outlets. Specifically, she asserted the right to free speech as the basis for dismissal "in the event the [trial court] deems the articles and blogs" filed along with Knowles and Music World's responses "to be outside [of] the right to petition."

As previously stated, a party may file a motion to dismiss if a lawsuit is brought against her in response to her exercise of the right of free speech, right to petition, or right of association. Specifically, the TCPA provides:

16

> If a legal action is based on, relates to, or is in response to *a* party's exercise of the right of free speech, right to petition, or right of association, *that* party may file a motion to dismiss the legal action.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (emphasis added). Here, Lang argues that Knowles and Music World's legal action, i.e., cross-claims, is based on the petition and Demand Letter, and the republication of those documents by media outlets. However, the Demand Letter was sent by an attorney representing "Lang Ferrer, PLLC," i.e., the Law Firm. Similarly, the original petition in this case was filed by the Law Firm as the only plaintiff. There is no indication in either the Demand Letter or the original petition that either were sent on behalf of Lang, individually, as opposed to the Law Firm. Lang is only a party to this case in her capacity as a defendant to the cross-claims asserted by Knowles and Music World in their First Amended Answer, Counterclaim and Cross Claim. Accordingly, Lang has not demonstrated that the legal action asserted against her by Knowles and Music World is "based on, relates to, or is in response to" *her* exercise of an enumerated right, as distinguished from that of the Law Firm. In other words, Lang, in her individual capacity, has not exercised her right to petition. Nor, has she, as alleged, exercised her right to free speech based on republication of the petition and Demand Letter in blogs and media outlets.

Lang asserts that the instant legal action is "based on, relates to, or is in response to" her exercise of the right to petition and free speech because Knowles

17

and Music World "allege [that] she is responsible for [the petition and Demand Letter] and [such actions are] attributed to her in their pleading." In support of her argument, Lang cites the Texas Supreme Court's opinion in *Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017).

In *Hersh*, the plaintiff asserted that the defendant made a statement that the defendant denied making. 526 S.W.3d at 465. Although the defendant denied making the statement, she also asserted that "an action can be based on, related to, or in response to the exercise of free speech, and therefore subject to the [TCPA], even if [a] defendant denies making the alleged communication." *Id.* In holding that the TCPA applied, the Court explained that "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Id.* at 467. As such, "[s]ection 27.005(b)'s requirement that a defendant moving for dismissal show the basis of a legal action 'by a preponderance of the evidence' must be read in harmony with [s]ection 27.006(a)." *Id.* Section 27.006(a) provides:

> In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). As such, the Court held that "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Hersh*, 526 S.W.3d at 467.

18

Lang's reliance on *Hersh* is misplaced. This case does not involve a situation where a defendant relies on the TCPA but denies the occurrence of the action forming the basis for invoking the TCPA. Lang does not deny that the Law Firm's original petition and Demand Letter were sent or the contents of those documents. Lang also does not allege, nor do Knowles or Music World, that Lang sent the Demand Letter or that she was a party to the original petition in her individual capacity. And though Knowles and Music World's counter- and cross-claims are "asserted jointly against [the Law Firm], as well as . . . Lang, individually, and . . . Ferrer, individually," this is so because "both Lang and Ferrer, individually were the attorneys in the [Law Firm] that represented Knowles and Music World," and, thus, "they are [subject] to personal legal liability for the misconduct and . . . negligence they performed."

Still yet, that the legal action at issue is not based on the exercise of a right by Lang is further supported by the timing of Knowles and Music World's cross-claims. They did not add Lang individually to the suit until after the Law Firm's Demand Letter and original petition were served on Knowles and Music World. And the claims brought against Lang and Ferrer for "misconduct" and "negligence" are in connection with the Law Firm's previous representation of Knowles and Music World, not the Law Firm's Demand Letter or original petition in this instant case.

19

As such, Lang has not proved, by a preponderance of the evidence, that the TCPA applies to the claims at issue.

Accordingly, we hold that the trial court did not err in partially denying Lang's motion to dismiss.[11]

We overrule Lang's sole issue.[12]

---

[11] Because we hold that the TCPA does not apply as asserted by Lang in her motion to dismiss, we need not address the remaining arguments set forth in her brief. *See* TEX. R. APP. P. 47.1.

[12] Lang asserts that additional defenses apply to bar Knowles and Music World's cross-claims against her. However, these defenses have no bearing on whether the TCPA applies in the first instance, and therefore, are not properly within the limited scope of this appeal. *See QTAT BPO Sols., Inc. v. Lee & Murphy Law Firm, G.P.*, 524 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *see also Lahijani v. Melifera Ptrs.*, No. 01-14-01025-CV, 2015 WL 6692197, at *4 (Tex. App.—Houston [1st Dist.] Nov. 3, 2015, no pet.) (mem. op.) ("The [judicial communications] privilege extends not only to statements made during the litigation, but also to statements made in contemplation of and preliminary to judicial proceedings. However, the issue of whether the absolute judicial communications privilege bars appellees' claims does not bear on our determination of whether the [TCPA] applies in the first instance and, therefore, is not properly within the limited scope of this interlocutory appeal."). Because we hold the TCPA does not apply, we do not need to determine whether these defenses apply in this case. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the trial court's order denying, in part, Lang's motion to dismiss pursuant to the TCPA.

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.