**Affirmed; Memorandum Opinion filed May 6, 2026.**



In The

# Fifteenth Court of Appeals

### NO. 15-25-00079-CV

**MISTY STRAUSS, Appellant**

**V.**

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellee**

**On Appeal from the 12th District Court of Walker County, Texas**
**Trial Court Cause No. 2330794**

## MEMORANDUM OPINION

Appellant Misty Strauss, an inmate with the Texas Department of Criminal Justice (TDCJ), was injured during transport to substance-abuse treatment. She sued the TDCJ, and the TDCJ filed a plea to the jurisdiction, which the trial court granted. We conclude that Strauss's injuries during transport were in connection with her substance abuse treatment, making TDCJ immune from her negligence claim. Tex. Gov't Code § 497.096; Tex. Code Crim. Proc. art. 42.20. We affirm the trial court's order granting TDCJ's plea to the jurisdiction.

## BACKGROUND

The facts relevant to deciding this appeal are few. While TDCJ transported Strauss between prison units, the transport vehicle was involved in an accident, which caused Strauss injuries. TDCJ transported Strauss so she could participate in its Substance Abuse Felony Punishment program, a drug abuse treatment program. It is undisputed that was the sole reason for her transport between units.

Strauss sued TDCJ for negligence. TDCJ filed a plea to the jurisdiction asserting sovereign immunity. After a hearing, the trial court granted TDCJ's plea and dismissed Strauss's claim. Strauss then filed this appeal.

## STANDARD OF REVIEW

Whether the trial court has jurisdiction is a question of law subject to de novo review. *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id*. at 226–27. The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

When a jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine whether a fact issue exists. *Miranda*, 133 S.W.3d

2

at 227. In evaluating an evidentiary plea to the jurisdiction, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id*. at 228. The plaintiff bears the burden to allege facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). The evidence is reviewed in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id*. at 228.

A plaintiff may overcome a sovereign immunity defense if the plaintiff demonstrates that the Legislature has clearly and unambiguously waived the government's immunity by statute. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 17 (Tex. 2018). Without such a waiver, the trial court lacks subject matter jurisdiction to proceed, and the causes of action alleged against a state agency are barred. *IT-Davy*, 74 S.W.3d at 855. The trial court must dismiss the suit if the plaintiff cannot satisfy the burden of affirmatively demonstrating the trial court's subject matter jurisdiction to hear and decide the case by showing that the causes of action asserted by the plaintiff fall within a statutory waiver of immunity. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023).

## ANALYSIS

The parties agree our decision in this case is controlled by two statutes that outline the scope of TDCJ's immunity in this case and the Texas Supreme Court's interpretation of those statutes in *Tarrant County v. Bonner*, 574 S.W.3d 893 (Tex.

3

2019). We will begin by outlining the statutory framework governing immunity in this case, and the Texas Supreme Court's interpretation of those statutes. We will then apply that interpretation to the facts before us.

Strauss sued TDCJ for negligence under the Texas Tort Claims Act. Tex. Civ. Prac. & Rem. Code § 101.025. The Act creates liability and therefore waives immunity for certain specific tort claims. *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006). When a statute waives immunity from suit "to the extent of liability," like the Act does, various immunities from liability are merged with immunity from suit. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022).

The Act creates liability for personal injury caused by the negligence of a state employee acting within the scope of his employment if: (1) such injury arises from the operation or use of a motor vehicle; and (2) the employee would be personally liable to the claimant under Texas law. Tex. Civ. Prac. & Rem. Code § 101.021(1). The government is liable only if the employee would be liable under Texas law. *Id.* § 101.021(1)(B). This analysis includes application of any immunities the employee might have. *Bonner*, 574 S.W.3d at 896.

Two statutory provisions of immunity are relevant here. The first is in the Government Code and provides that:

> An employee of the Texas Department of Criminal Justice . . . is not liable for damages arising from an act or failure to act in connection with community service performed by an inmate imprisoned in a facility operated by the department or in connection with an inmate or offender programmatic or nonprogrammatic activity, including work, community service, educational, and treatment activities, if the act or failure to act was not intentional, willfully or wantonly negligent, or performed with conscious indifference or reckless disregard for the safety of others.

4

Tex. Gov't Code § 497.096. The Code of Criminal Procedure contains a similar provision:

> (a) An individual listed in Subsection (c) of this article and the governmental entity that the individual serves as an officer or employee are not liable for damages arising from an act or failure to act by the individual or governmental entity . . . in connection with an inmate, offender, or releasee programmatic or nonprogrammatic activity, including work, educational, and treatment activities, if the act or failure to act:
>
> (1) was performed pursuant to a court order or was otherwise performed in an official capacity; and
>
> (2) was not performed with conscious indifference to the safety of others.
>
> (b) Chapter 101 Civil Practice and Remedies Code, does not apply to a claim based on an act or a failure to act of an individual listed in Subsection (c) of this article or a governmental entity the officer serves as an officer or employee if the act or failure to act is in connection with a program described by Subsection (a) of this article.
>
> (c) This article applies to:
> . . .
> (5) an officer or employee of a state agency[.]

Tex. Code Crim. Proc. art. 42.20(a)–(c). A summary of these provisions, as relevant here, is that an employee of a state agency is not liable for damages to an inmate "in connection with" "programmatic or nonprogrammatic activity, including work, educational, or treatment activities" absent proof of gross negligence. *See Bonner*, 574 S.W.3d at 897.

The parties do not dispute that Strauss was an inmate and that the sole purpose of her transportation between units was for her substance abuse treatment. As a

5

result, the sole issue in this appeal is whether transporting Strauss from one unit to another so that she could receive such treatment was "in connection with" her "treatment activities." In deciding the meaning of "in connection with" and whether it includes the facts alleged here, we must keep in mind that in construing any statute that waives immunity, we must strictly construe it in a manner that favors retention of immunity. *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012).

The Texas Supreme Court has considered the scope of the phrase "in connection with" in these immunity statutes. In *Bonner*, the Texas Supreme Court was confronted with a situation in which an inmate, Bonner, was injured when his chair collapsed while receiving treatment for diabetes. 574 S.W.3d at 894. The chair had previously broken, and instead of discarding it, corrections officials placed it in the multipurpose room often used by the jail to treat diabetic inmates, including Bonner. *Id.* at 895. Bonner sued for his injuries.

The court in *Bonner* analyzed the immunity statutes quoted above and noted that in past decisions, it had construed the phrase "in connection with" broadly. *Id.* at 897–98 (citing *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899–901 (Tex. 2017) (per curiam) and *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam)). Consistent with its broad interpretation of the phrase, the court ultimately concluded that because the County's negligent acts intersected with Bonner's medical treatment, they were "in connection with" each other. *Id.* at 899. "The two statutes immunize negligent acts and omissions that are reasonably related to the covered programs or activities, even when the relationship is indirect." *Id.* at 900.

The basis of Strauss's contrary, narrow interpretation of *Bonner* is the next sentence of that opinion, which states that "[a]s a practical matter, this includes acts or omissions which give rise to damages during covered programs or activities." *Id.* Strauss contends this sentence limits the scope of *Bonner* to injuries occurring during

6

a particular activity. We disagree. This sentence does not limit the *Bonner* opinion in any way; it merely points out the obvious—that if an indirect relationship is all that is required to be "in connection with" an activity, then it also follows that a direct relationship would qualify. Strauss's interpretation requires us to ignore the remainder of the *Bonner* opinion, which we refuse to do.

Further bolstering our interpretation of *Bonner* and the relevant statutes is the *Bonner* court's citation of a case involving application of these statutes to transportation of an inmate. *Id.* (citing *Moncada v. Brown*, 202 S.W.3d 794, 799–800 (Tex. App.—San Antonio 2006, no pet.). In *Moncada*, inmates were taken to a field to trim trees and clear brush. 202 S.W.3d at 796. The inmates rode to the field in a flatbed trailer behind a truck. *Id.* at 796–97. When the truck hit a pothole or a bump, the trailer disconnected, and the inmates were injured. *Id.* at 797. Although Strauss correctly points out that the court in *Moncada* assumed immunity applied because transport was "in connection with" the inmates' work and then proceeded to decide whether there was evidence of gross negligence, *id.* at 802, the fact remains that the Texas Supreme Court cited the decision with approval as part of its analysis in *Bonner*. 574 S.W.3d at 900 (citing *Moncada* directly after the sentence relied upon by Strauss, above). And, for *Moncada* to have been correctly decided, the transportation of the inmates must have been considered "in connection with" the work the inmates were to perform in the field even though it was not directly related to such work; otherwise, the analysis would not have been limited to gross negligence.

Turning to the present case and applying the reasoning of *Bonner*, Strauss's injuries intersected with her treatment for substance abuse. Again, it is undisputed that the sole reason for her transport is so that she could receive treatment for her substance abuse. Her transportation and resulting injuries were reasonably related to her treatment, even if that relationship is indirect. With that in mind, the trial court

7

correctly concluded that TDCJ had immunity from Strauss's claim for negligence. And, Strauss does not contend that she presented sufficient evidence of gross negligence to overcome immunity.

## CONCLUSION

Under these circumstances, we affirm the trial court's order granting TDCJ's plea to the jurisdiction.

/s/*Scott K. Field*
Scott K. Field
Justice

Before Chief Justice Brister and Justices Field and Farris.